JOHN W. PENCE and others *vs.* ST. PAUL, MINNEAPOLIS & MANITOBA
RAILWAY COMPANY.

December 22, 1881.

**Railroad—Power to Lease.**—By virtue of Sp. Laws 1870, *c.* 57, § 4, and
Sp. Laws 1871, *c.* 71, § 1, the Minneapolis & St. Louis Railway Company
has authority to make a valid lease to another railway company of this
state of rights which it has acquired, since the passage of said chapter
71, by condemnation of land.

**Lease — Covenant against Subletting — License to maintain Railroad
Tracks on Premises.** — A lease of parcels of land abutting on public
streets contained no restrictions as to the use of the leased premises by
the lessees, or as to their authority with reference thereto, except a cove-
nant not to sublet the premises or any part thereof without the written
consent of the lessors, a right to re-enter being reserved in case of breach.
*Held*, that the fact that, without objection from the lessees, and by their
tacit permission, a railroad company is permitted to lay tracks and run
trains over the adjacent half of the streets upon which the leased prem-
ises abut, and that it is expressly permitted by the lessees to lay track
and run trains across the leased premises, (outside of the streets,) partly
for the accommodation of the lessees, is, without something more, evi-
dence of a license only, and not of a subletting. It does not entitle the
lessors to re-enter under their lease. It does not show that the railway
company is in possession, nor that the lessors are entitled to possession,
and therefore the lessors cannot maintain ejectment against the railroad
company to recover possession of the premises thus used by it.

Plaintiffs brought this action in the district court for Hennepin
county, to recover possession of certain premises in the city of
Minneapolis, used and occupied by the defendant for railroad pur-
poses, and for damages for detention of the same.

The case was tried, without a jury, by *Young*, J., who found, as
facts, that a portion of the premises described in the complaint,
(being the same designated as tract B in the opinion,) was, with
other property, condemned, in 1878, by the Minneapolis & St. Louis
Railway Company for railroad purposes; that subsequently, and in
the same year, this portion was leased by that company to the First
Division of the St. Paul & Pacific Railroad Company, to all the prop-

erty, rights and franchises of which company the defendant has succeeded. That all the remaining portions of the property described in the complaint, excepting a portion of lot 5, in block 4, (see sketch in the opinion,) which has been properly condemned by defendant, are the property of plaintiffs, and have been leased by them to Camp & Walker, as recited in the opinion; and that on these leased portions the defendant maintains several tracks and turnouts, over which pass at least ten trains per day. As conclusions of law, the court found that the Minneapolis & St. Louis Railway Company did not have power, under their condemnation, to sell or lease the land condemned, and that its use by defendant is unauthorized and imposes an additional servitude; that Camp & Walker are not empowered, under their lease, to authorize the defendant to use the leased land for railroad purposes; and that, therefore, plaintiffs are entitled to judgment for possession of the land in question as against defendant. Defendant appeals from an order refusing a new trial.

*R. B. Galusha* and *Geo. L. & Chas. E. Otis,* for appellant.

*Wilson & Lawrence,* for respondents.

The defendant's use of the land condemned by the Minneapolis & St. Louis Railway Company is the imposition of an additional servitude, for which the original owners are entitled to additional compensation. The use of land by two railroads is a greater burden than the use by one. *Bangor & Piscataquis R. Co.* v. *McComb,* 60 Me. 290; *Hatch* v. *Cincinnati & Ind. R. Co.,* 18 Ohio St. 92, 123; *Proprietors of Locks and Canals* v. *Nashua & Lowell R. Co.,* 10 Cush. 385; *Roman* v. *Strauss,* 10 Md. 89; *Strong* v. *City of Brooklyn,* 68 N. Y. 1; *Southern Pacific R. Co.* v. *Reed,* 41 Cal. 256; Mills on Eminent Domain, § 32.

BERRY, J. The plaintiffs are owners of a piece of land, of which a part, called for convenience tract A, was in 1878 condemned by the Minneapolis & St. Louis Railway Company for the purposes of its railroad. It is not disputed that the proceedings were sufficient to invest the company with whatever rights and interest its charter authorized it to acquire by condemnation. After the condemnation, the company leased a portion of tract A,—which, for convenience, we will call tract B,—and the defendant the St. Paul, Minneapolis &

Manitoba Railway Company has succeeded to the lessee's rights. So much of the lease as is important to this opinion is as follows, viz.:

"Whereas, the parties of the first and second parts [*i. e.*, the Minneapolis & St. Louis Railway Company and the lessees, the defendant's predecessors in interest] are operating lines of railroad which connect at the city of Minneapolis, in this state, and have heretofore made certain arrangements whereby each party is to have the right to use certain portions of the railroad and certain portions of the ground secured for right of way of the other party, at and near the said city of Minneapolis; and it being mutually desirable, and in accordance with such arrangement heretofore made, that certain further facilities be extended by the party of the first part to the parties of the second part, to enable them to enter upon and pass over a certain portion of the railroad and right-of-way ground of the party of the first part, with their cars and engines, the better to operate their said line of railroad, and facilitate the transaction of business of both the parties hereto, at said connecting point:

"Therefore, in consideration of the premises and of the rents hereinafter reserved, the party of the first part does hereby * * *. lease * * * to the parties of the second part, their successors and assigns, the right to have, use, maintain and operate the railroad track now extending through the real estate and right-of-way ground belonging to the party of the first part, and hereinafter particularly described; and also the right at all times to make, use and maintain as many additional tracks and side tracks as they may from time to time require for use in the operating of their said railroad through and over said premises and right-of-way ground, which said real estate and right-of-way ground is known and described as follows, viz.: [Here follows a description of tract B, together with the adjacent half of an adjoining public street.] To have and to hold all and singular the rights and privileges, real estate, right-of-way ground, and premises hereinbefore let and demised, unto said parties of the second part, their successors and assigns, for the period of 999 years from the date of these presents, and for the agreed rental of one dollar per annum, to be paid annually.

"The true intent and meaning of these presents being that the said party of the first party does hereby let and demise for the term aforesaid, to said parties of the second part, their successors and assigns, the right to have, use and occupy, as hereinbefore set forth, the said above-described premises, to the full extent which said party of the first part can or may lawfully lease or demise the same under and by virtue of the right, title and interest in and to said premises, and every part thereof, which has accrued or shall hereafter accrue to it, under and by virtue and pursuant to the condemnation thereof heretofore made by said party of the first part."

It is found by the court below that tract B, including the half of the street mentioned, is now used by the defendant corporation for railroad purposes, in accordance with the terms of the lease.

The foregoing extracts from the lease, together with the findings of the court, show that the purpose and effect of the lease were to confer upon the lessees, and their successors and assigns, the possession and right of possession of tract B and the adjacent half of the street, for the uses and purposes of the railroad now owned and operated by the defendant, and that the defendant is occupying and using said premises for such uses and purposes exclusively. As to the compepetency of the defendant railway company and its predecessors in interest to acquire and take such possession and right of possession for these purposes, there is no controversy. But the main question upon this branch of the case is, had the Minneapolis & St. Louis Railway Company authority to make the lease? This question was discussed in the briefs of counsel at great length, upon general principles, and with reference to many adjudicated cases. But it seems to us to be completely answered by a provision of an amendment to the charter of the Minneapolis & St. Louis Railway Company, found in Sp. Laws 1871, *c.* 71, § 1, cited in *Freeman* v. *Minneapolis & St. Louis Ry. Co.*, *ante*, p. 443.

Sp. Laws 1870, *c.* 57, § 4, from which the Minneapolis & St. Louis Railway Company derives its power of condemnation, provides that "said company shall have the right of way upon, and appropriate to its own use and control for the purposes of said road and its appur-

tenances, land" for right of way, for sites for its buildings, and for side tracks, etc.; and "whenever any lands or materials shall be required for the construction of said road, and the same shall not be given or granted to said company, the compensation to be paid therefor by said company shall be ascertained in manner following." Here follow directions for condemnation proceedings, upon the conclusion of which, as section 4 proceeds to provide, "the said corporaation shall, upon the payment to each party interested of the sum determined thereby to be due him or her, as compensation for property taken, or the deposit of the same in court for her or his use, become invested and seized of the title of the lands or real estate for which such payment or deposit shall have been made, and entitled to a full, free and perfect use and occupancy of the same for the purposes aforesaid." The amendment to the charter of the Minneapolis & St. Louis Railway Company, before referred to as found in Sp. Laws 1871, c. 71, § 1, gives the company "power at any time to contract with any other railroad company or companies of this state, in relation to any matters or things touching the construction of its railroad and appendages, and the running of cars and locomotives thereon, and the leasing for any term of years of the whole or any part of its railroad and franchises to any other railroad company of this state; and contracts so made shall be valid and binding on the parties thereto."

One effect of this amendment is to authorize the Minneapolis & St. Louis Railway Company, at any time, to enter into a valid and binding contract with any other railroad company in the state,—as, for instance, the defendant, or its predecessors in interest,—in relation to any matters or things touching the running of cars and locomotives of such other company on its railroad, and the leasing for any term of years of the whole or any part of its railroad and franchises to any such other railroad company. In the present instance, even if the Minneapolis & St. Louis Company was not authorized to make the lease before us under the clause empowering it to make contracts with other railroad companies in this state touching the running of cars and locomotives on its railroad, there can be no doubt that it was authorized

to make the lease under the clause providing for the leasing of the whole or any part of its railroad and franchises. Another effect of this amendment is that the right to make contracts touching the running of the cars and locomotives of other companies over its road, and touching the leasing mentioned, becomes an incident—in fact, a defined part—of the rights which the Minneapolis & St. Louis Railway Company acquires under section 4 of the act of 1870, before cited; that is to say, as respects all condemnations made after the passage of the amendment, the company takes that which it condemns with the rights which the amendment purports to confer. By force of the amendment, these rights are included in the appropriation "to its own use and control for the purposes of its road," which the first part of section 4 authorizes the company to make, in the "full, free and perfect use and occupancy" for such purposes, mentioned in the concluding sentence of that section. If these are not the effects of the amendment, it. is pertinent to ask what possible effect could be given to the contracts and leases authorized, and which the amendment declares to be valid and binding?

From these views, it follows that a condemnation made, (as that involved in our present inquiry was) after the passage of the amendment of 1871 is a condemnation, among other things, of a right to make the contracts and leases authorized by the amendment, and that the compensation awarded includes compensation for the acquiring of the same. Upon this branch of the case, our conclusion, then, is that the lease is valid, and confers upon. the defendant the right to the possession, use and occupancy of tract B, and the adjacent half of the street, for the uses and purposes therein expressed.

For the better understanding of the second branch of this case, the following sketch will be found useful. The dotted lines denote defendant's tracks:

Lot 1, in block 5, together with that part of lot 10, in said block, lying west of plaintiffs' east line, and tract D, all as they appear upon the sketch, are the property of the plaintiffs, by whom they are leased to Camp & Walker for a term of 10 years, ending June 14, 1887. The lease contains no restriction as to the use of the leased premises by the lessees, or as to their authority with reference to the same, except a covenant not to sublet the premises or any part thereof without the written consent of the lessors. It is provided in the lease that, if the lessees fail to fulfil any covenant therein, it shall be lawful for the lessors to re-enter and take full and absolute possession of the leased premises, and hold and enjoy the same fully and absolutely, without such re-entry working a forfeiture of the rents and covenants to be paid and performed by the lessees. Under the rule established by repeated decisions in this state, the plaintiffs, as owners of lot 1, own presumably to the centre of Sixth street and Fourth avenue, upon which said lot abuts, as also to the centre of Sixth street, in front of tract D. The lease of the lot and tract, by implication, passes to the lessees a leasehold estate in the avenue and street, to the extent of the plaintiffs' estate therein. To that extent, the lessees are entitled to the possession of the street and avenue under their lease, as against the plaintiffs.

It is found that one of the defendant's tracks, running across tract D, Sixth street, and lot 1, to Camp & Walker's planing mill, was "constructed by defendant with the consent and partly for the accommodation of said Camp & Walker." It is also found that "along said leased tract [meaning, as we understand it, along the westerly half of Fourth avenue and across Sixth street] defendant maintains several tracks and turnouts, over which pass at least 10 trains per day." We infer (for there is no distinct finding upon the subject) that the defendant is thus occupying with its tracks the premises leased to Camp & Walker, including the street and avenue, without objection from the lessees, and by their tacit permission; and, as respects the track laid to the planing mill, with their express permission. These facts make out a case, not of a subletting, but of a mere license. There is nothing to show that any tenancy has been created. There is no reservation of rent; no term; no contract between Camp & Walker and the defendant under which the latter has any right of use or occupation of any kind, except at the mere pleasure of the former, or under which Camp & Walker have given up their own possession or right of possession. There is nothing to show that the privilege of passage may not be revoked at any moment. If we are right, nothing has taken place which entitles the plaintiff to a re-entry upon the leased premises or any part thereof, much less to possession. The defendant is not in possession, and, if it was, the plaintiffs have not shown themselves entitled to possession. Hence, they cannot maintain this action of ejectment as respects the premises involved in the second branch of the case; for, with exceptions which have no importance in this case, the general rule is that ejectment can be maintained only against a person in possession, by one having a present exclusive right of possession. Taylor's Landlord & Tenant, § 699; Wood's Landl. & Ten. 451. This disposes of the case.

Order reversed.