# CHARLESTON.

EASLEY COAL COMPANY *v.* BRUSH CREEK COAL COMPANY *et al.*

Submitted May 18, 1922.  Decided May 23, 1922.

1. PARTIES—*Lessor May Intervene in Suit by Stranger to Compel Assignment of Lease on the Ground of Lack of Right of Lessee to Assign.*

   A lessor may intervene in a suit brought by a stranger to a lease executed by him, to compel an assignment thereof, on the ground of lack of right in the lessee or his assignee, to assign, whether assignment without consent of the lessor is made a ground of forfeiture or not, even though it should be found on the hearing that there is right to assign; because he has a litigable interest in all of the questions upon the solution of which the right to assign depends. (p. 293).

2. LANDLORD AND TENANT—*A Condition Against Assignment is Governed by the Rule of Strict Construction.*

   Being a restraint upon alienation, a condition against assignment by a lessee or an assignee of a lessee is governed by the rule of strict construction, and it does not exist unless it has been clearly and definitely provided in the lease or some other written instrument made collateral thereto. (p. 305).

3. SAME—*Lessor Agreeing to One Assignment Waives Restrictions Against Assignments.*

   When there is a condition in a lease against assignment of the term by the lessee, without the consent of the lessor, and such consent is given to one assignment, without any restriction as to further assignments, the condition is completely waived and the assignee may assign the term without the consent of the lessor. (p. 301).

4. SAME—*Assignee's Assumption and Agreement to Fulfill Terms of Contract Held Not to Save to the Lessor the Condition Against Assignment.*

   Assumption of, and agreement faithfully to fulfill, on the part of an assignee, all of the terms and conditions of a lease containing a condition or covenant against assignment thereof by the lessee, in a deed of assignment thereof, to which the lessee and assignee only are formal parties, in which the lessor joins only for the purpose of assenting to the assignment made by it, and in which there is not, anywhere nor in any form, a specific inhibition of further assignment, nor one arising by necessary implication, do not save to the lessor the

benefit of such condition or covenant; nor do they, together with a stipulation that the lease is to be a part of the deed and recitals of the condition or covenant and of purpose in the making of the lease, to have it assigned to a person of the character of the assignee, effect such saving; and the assignee may assign the term, in whole or in part, without the consent of the lessor. (p. 302).

5. SAME—*Doubtful Negotiations, Founded on No New Consideration, Held Not to Save the Lessor the Benefit of a Covenant of Assignment Under Rule of Contemporaneous Construction.*

Being doubtful and equivocal in meaning and founded upon no new consideration, negotiations by the assignee and the prospective second assignee, with the lessor, for his consent to the proposed assignment, and written admissions of necessity therefor, do not save to the lessor the benefit of such condition or covenant, under the rule of contemporaneous or practical construction. (p. 306).

6. INJUNCTION—*Lessor May be Enjoined Where Threatening to Eject Assignee Under Valid Assignment.*

A lessor who has threatened to eject from the leased' premises, an assignee of a lease holding it under a valid assignment, on the ground of forfeiture. by reason of an alleged second assignment without consent, may be enjoined from instituting an action of ejectment for such purpose, upon determination, in a suit to which he is a party, that the assignee has right to make such second assignment and in which he is required specifically to perform his agreement to do so, by way of award of incidental relief, in a cause of action cognizable in equity, right to have specific performance of the contract. (p. 306).

Appeal from Circuit Court, Boone County.

Suit by the Easley Coal Company against the Brush Creek Coal Company and others, and from a decree therein the defendant Brush Creek Coal Company appeals.

*Reversed; Injunction perpetuated; Remanded.*

*S. B. Avis,* for appellant.

*J. E. Campbell,* for appellee Coal River Mining Co.

*E. L. Hogsett,* for appellee Easley Coal Co.

POFFENBARGER, PRESIDENT:

By the decree complained of on this appeal, a bill by a mining corporation claiming right to an assignment of one

of two certain leases of land for coal mining purposes, against the lessor and a former assignee of the leases, praying specific performance of an agreement to assign and an injunction inhibiting the lessor from proceeding at law to eject the complainant from the property embraced in the lease it claims to have contracted for, was dismissed, after full development of the cause in respect of both pleadings and evidence.

But little dispute as to the facts is found in the record. The rights of the parties are determinable, for the most part, by application of the law to a state of facts disclosed by documentary evidence, the lease, a clause therein, forbidding assignment without the consent of the lessor in writing, and the previous assignment made with such consent. The vital and controlling inquiry in the cause seems to be the effect of the lessor's written assent to the prior assignment. For the plaintiff and one of the defendants, the former assignee, it is insisted that the lessor, by such assent, exhausted the right and power reserved to it, by the restrictive clause, and that further assignments can be made without its consent. In other words, it is claimed that, by reason of the assent to the assignment, the lease in the hands of the assignee may now be assigned as freely as if no restriction upon assignment had been inserted in it.

The two leases are both dated, May 24, 1917, and were executed to A. J. Dalton and Edward H. Butts, by the Coal River Mining Company. Clause 17 of each of them reads: "This lease shall not be assigned or mortgaged by the lessees, or any part thereof sub-let, except by consent of the lessor in writing." An assignment of both was made by Dalton and Butts, to the Brush Creek Coal Company, a corporation, and bears date, June 19, 1918. It contains a preamble reciting the execution of the leases, the said 17th clause of each, an understanding and agreement that the lessees would transfer them to a corporation to be organized by them, and the desire of the Brush Creek Coal Company, to accept them, under the terms and conditions therein contained, as in the assignment set out. For and in consideration of one dollar and a royalty of three cents per ton, on all coal mined, used, manu-

factured or removed from the property, the lessees bargained, sold, transferred and assigned to said company, its successors and assigns, all of their property rights and privileges as set forth in the leases, and by stipulation, made the leases parts of the deed of assignment and required said deed to be recorded in connection with them. Another stipulation or covenant reads in part: "The Brush Creek Coal Company hereby assumes and will faithfully fulfill all of the terms and conditions imposed upon the said A. J. Dalton and E. H. Butts in the lease agreements hereby assigned." The formal parties to the deed of assignment are Dalton and Butts of the first part and the Brush Creek Coal Company of the second; but the Coal River Mining Company joined them in the execution thereof, by way of assent to the assignment and such assent is expressed in these words: "The Coal River Mining Company by its duly authorized representatives hereby assents to the assignment of said lease agreement to the Brush Creek Coal Company as witnessed by its signature."

One of the leases embraces two lots or parcls of land containing in the aggregate 1,635.40 acres, designated Leases Nos. 6 and 7. The other covers four tracts containing in the aggregate 2,790.99 acres, designated Leases Nos. 4, 5, 8 and 9. The contract for a second assignment, enforcement whereof is sought by the bill, is limited to Lease No. 6, containing about 600 acres, and part of Lease No. 7, containing about 735 acres. As to No. 6, there is a written memorandum of the agreement, but, as to No. 7, the agreement was oral.

At the date of execution of the two leases, the country in which the land lies seems to have been new and undeveloped, wherefore they were not made effective in all respects, if at all, until after the lessor had constructed a railroad into the territory. By the 20th clause of each lease, it was provided, that it should not go into effect. except upon conditions set forth in certain agreements between the parties, to which it was annexed. But, by declarations written in them, they were both made effective on and after August 1, 1918, one such declaration having been made by Dalton and Butts and the other by the Brush Creek Coal Company.

The negotiations for the assignment from the Brush Creek Coal Company, of Lease No. 6 and Lease No. 7, were commenced about May 1, 1920, and resulted in an agreement as to Lease No. 6, about May 8, 1920. On that date, a letter in duplicate was written by the Brush Creek Coal Company, to Fred Easley, promoter or organizer of the Easley Coal Company, in which the assignment and the terms thereof were proposed. It seems to have been intended that Easley's signature to one copy of the letter should constitute an acceptance of the proposal and convert it into a contract. By a later oral agreement, Lease No. 7 was included. In the letter, the writer agreed to obtain the written consent of the lessor to the transfer of Lease No. 6. From early in May until about June 30, 1920, there was correspondence between the lessor, on the one hand, and Easley and the Brush Creek Coal Co., on the other, concerning the attempted assignment, in the course of which the Coal River Mining Co. quoted the Easley Coal Co. prices on some timber on the land, it needed. The desired assent to the assignment was withheld and, about the last of June, 1920, notices were given the Easley Coal Company and the Brush Creek Coal Company, to vacate the property, the former, on the ground that it had never had any right, and the latter, on the ground that its right had been forfeited by its attempt to assign without consent. At that time, the Easley Coal Company had expended in cash, on the property, about $1,350.00, and, from that time until Dec. 31, 1920, its expenditures increased to about $148,367.66; but it has mined considerable coal from the land. The notice was served on the Brush Creek Coal Company, sometime in July, 1920. It was broad enough in its terms to include both leases and advised that a suit in ejectment to obtain possession of the premises, would be instituted as soon as possible, unless they should be surrendered without litigation. In view of these notices and the threat of procedure by ejectment against both companies, this suit was instituted for the purposes already stated and a temporary injunction obtained against the Coal River Mining Company.

The pleadings filed by the respective parties seem to have brought all of them and their interests into the suit fully enough for inquiry and determination of their rights. The Coal River Mining Company answered the bill and amended bill. The Brush Creek Coal Company also answered, admitting practically all of the allegations of the bill, and then set up matter as ground for relief against its codefendant and virtually joined in the prayer of the bill. On this pleading process issued against the Coal River Mining Company. Then it, further answering, put in a special reply in writing to the alleged new matter of its codefendant's answer. All three of the parties interested in the subject matter of the controversy are thus before the court, with their pleadings and evidence. There is no denial of this status to any of them, in argument or otherwise, and all seem to desire full and complete investigation and adjudication of their respective rights.

On one side, the pleadings and argument seem to proceed upon the theory of a forfeiture of the lease, by reason of the attempted assignment, and, on the other, of impossibility of such forfeiture and right of re-entry, because, it is urged, the restriction upon assignment was exhausted and rendered ineffective by the written assent given to the assignment to the Brush Creek Coal Company. In this way, the argument has been reduced to a single question. Solving it in their own ways, the attorneys on each side predicate their respective claims of results, and consequences upon their own solutions. Whether the Coal River Mining Company has the right of re-entry it claims depends upon the interpretation of the lease, as to the status of the covenant or condition in question, with reference to the re-entry or forfeiture clause.

Forfeitures of estates are not favored in law. The right to forfeit must be clearly stipulated for in terms, else it does not exist. Every breach of a covenant or condition does not confer it upon the injured party. It never does, unless it is so provided in the instrument. Such breaches are usually compensable in damages, and, if a forfeiture has not been stipulated for, it is presumed that the injured

party intended to be content with such right as is conferred by the ordinary remedies. The broken covenant or condition relied upon for forfeiture must be found not only in the instrument, by clear and definite expression, but also within the forfeiture clause, by such expression. A covenant or condition merely implied, or an express one not clearly within the forfeiture clause, will not sustain a claim of forfeiture, by reason of its breach. *Peerless Carbon Black Co.* v. *Gillespie,* 87 W. Va. 441. The non-assignment condition in a lease constitutes no exception to this rule. *Burnes* v. *McCubbin,* 3 Kan. 221; *Spears* v. *Fuller,* 8 N. H. 174; *Walsh* v. *Martin,* 69 Mich. 29; *In re Pennewell,* 119 Fed. 139; 18 A. E. E. L 639; 24 Cyc. 1350.

Another principle to be observed is that, in so far as a covenant is relied upon to sustain a claim of forfeiture it is always strictly construed, in respect of that claim. The instrument must give the right of forfeiture in terms so clear and explicit as to leave no room for any other construction, or it does not exist. *Peerless Carbon Black Co.* v. *Gillespie,* cited; *Jackson* v. *Silvernail,* 15 Johns. (N. Y.) 278; *Elevator Cases,* 17 Fed. 201; *Finley* v. *King's Lessee,* 3 Pet. 346; *Doe* v. *Carter,* 8 T. R. 61; *Phila. & E. R. Co.* v. *Catawissa R. Co.,* 53 Pa. St. 20; Tiffany Real. Prop., sec. 69; Jones Real Prop., sec. 632; 4 Kent's Com. 129. In obedience to this principle, it is uniformly held that, in case of a doubt as to whether a clause in a deed is a condition subsequent, breach of which would divest an estate, or a covenant breach of which would merely create liability for damages, the provision is such a covenant and not a condition. *Millan* v. *Kephart,* 18 Gratt. 9; *Doe* v. *Phillips,* 9 Moore 46; *Boone* v. *Clark,* 129 Ill. 466; *Rawson* v. *School District,* 7 Allen (Mass.) 125; *Graves* v. *Deterling,* 120 N. Y. 447; *Woodruff* v. *Woodruff,* 44 N. J. Eq. 349; *Hoyt* v. *Kimball,* 49 N. H. 322; *Scovill* v. *McMahon,* 62 Conn. 378; *Chicago etc. Ry. Co.* v. *Titterington,* 84 Tex. 218; *Thornton* v. *Trammell,* 49 Ga. 202; *Hawley* v. *Kafitz,* 148 Cal. 393; *St. Peter's Church* v. *Brogaw,* 144 N. C. 126; *Ecroyd*

v. *Coggesshall,* 21 R. I. 1; 4 Kent's Com. 152; 2 R. C. L., p. 1086:

When the right has been clearly and unequivocally secured by the terms of the contract, it does not accrue unless nor until there has been an equally clear and unequivocal breach of the condition. Neither intent nor purpose to assign is a violation of the agreement, however manifest, nor do initial steps in the process of assignment, effect a forfeiture or confer a right of re-entry. The assignment must be complete. A cropping contract between the lessee and a third person is not an assignment. *Bedford* v. *Graybill,* 7 Ky. L. Rep. 373. To effect an assignment, an instrument relied upon for such purposes must contain apt words. *Brewer* v. *Dyer,* 7 Cush. (Mass.) 337. A declaration by the lessee that he will stand possessed of the term for the benefit of a trustee for his creditors and assign it as the trustee should direct does not suffice. *Gentle* v. *Faulkner,* 2 Q. B. 267. An executory contract to assign is not a breach of the condition, even though the prospective assignee has been let into possession. *Livingston* v. *Stickles,* 7 Hill (N. Y.) 253; *Horsey* v. *Steiger,* 2 Q. B. 79; *Cox* v. *Bishop,* 2 De G. M. & G. 815; *Doran* v. *Kenny,* Ir. R. 3 Eq. 148. See 24 Cyc. 973. The rule is equally strict as to breach of a covenant not to' sublet. A cropping contract between the lessee and a third person is not a sub-lease. *McLaughlin* v. *Kennedy,* 49 N. J. L. 519; *Guest* v. *Opdyke,* 31 N. J. L. 552. A mere permissive use of land is not a sub-letting. *Lowell* v. *Strahn,* 145 Mass. 1; *Pence* v. *St. Paul etc. R. Co.,* 28 Minn. 488; *Leduke* v. *Barnett,* 47 Mich. 158; *Hancock* v. *Austin,* 14 C. B. (N. S.) 634.

Although the letter proposing the assignment of Lease No. 6, called the proposition one of sub-leasing, the designation was manifestly erroneous. Read in the light of the terms and provisions of the lease and the prior assignment, it was one of assignment. No reversion was reserved. The Easley Coal Company was to be put exactly into the shoes of the Brush Creek Coal Company, as to that lease. A royalty of nine cents went to the original lessor and three cents to

Dalton and Butts, making twelve cents. That is the amount the Easley Coal Company was to pay. The consideration for the assignment was $10,000.00 of capital stock, to be issued to H. C. Jones as trustee. The name given the proposed transaction is immaterial. Its character is fixed by its terms, provisions and purposes. Upon these, the law applies its name. *Smiley* v. *VanWinkle,* 6 Cal. 605; *Craig* v. *Summers,* 47 Minn. 189; *Stewart* v. *Long Island R. Co.,* 102 N. Y. 601; 24 Cyc. 975. In the original bill, it was called a sublease, but the error in designation was corrected by an amended bill. Nothing in law or practice forbids such a correction.

Whether there is a forfeiture or can be one, on the ground of assignment, is not decisive of the case, however, and, for that reason, the question will not now be decided. There may be in the lease, at least a covenant not to assign without written consent either express or implied. If it is only a covenant in law, an implied one, it may suffice for all ordinary purposes, though it might not constitute a basis for a forfeiture. *Peerless Carbon Black Co.* v. *Gillespie,* 87 W. Va. 441. Though only implied, it may impose a binding obligation for breach of which damages could be awarded, and, in proper cases, it might constitute sufficient ground for a decree of specific performance and for injunctive relief. A breach of it, though not made a ground of forfeiture of title, might confer upon the lessor a right of action for damages. As a matter of common sense and justice, it seems to be perfectly clear also, that a court of equity would not compel specific performance of an agreement to assign, by one who is under another agreement not to assign. In other words, a court of equity would not require any person to break one agreement, by way of compliance with another. Here, the Brush Creek Coal Company, while protesting that it has been released from its covenant not to assign without consent of the lessor, either expressly or by estoppel, declines to perform its agreement to do so, because its claim of such release is denied by the lessor. If it were the movant for relief here its pleading

would be in the nature of a bill for advice and instruction and the relief sought in the nature of a declaratory decree, for which there is no precedent, except in the few jurisdictions in which statutes authorize declaratory judgments. But the Easley Coal Company is the plaintiff, and it is not perceived how the motive or reason for non-performance, on the part of the Brush Creek Coal Company, can preclude right in the Easley Coal Company, to sue that company, for specific performance. Its ground for relief against the Coal River Mining Company, however, is not so clear. If sued in ejectment, it could defend under the title of the Brush Creek Coal Company, unless that title has been forfeited. *Russell* v. *Tenant,* 63 W. Va. 623, 631; *Lewis* v. *Yates,* 62 W. Va. 575; *Pickens* v. *Stout,* 67 W. Va. 422, 434. It has no contract with the Coal River Mining Company, no equity against it. There is no proof of any authorized express agreement by the lessor with the Easley Coal Company to assent to an assignment. Nothing is asserted against it except the alleged release and estoppel by knowledge of the entry and improvement and acquiescence. This defense, if good, is equally available at law, for the question involved would not be one of title. Unless forfeited, the title to the term is indisputably in the Brush Creek Coal Company. It would be only one of waiver of a covenant, of which a court of law is as competent to take cognizance as a court of equity. It is not within the doctrine of *Garrett* v. *South Penn Oil Company,* 66 W. Va. 587, 593, and other cases there referred to. If the title has been forfeited the defense would fail, of course, but that does not affect the adequacy of the remedy. But the Coal River Mining Company is here both upon process sued out against it and by its special reply in writing to the cross-bill filed against it. In its answers and replication, no prayer for dismissal is found. It asserts such right as it has and prays judicial vindication thereof in this suit. If it has not parted with its right under the covenant against assignment, it may have standing in a court of equity to enforce compliance therewith, whether breach of it would work a

forfeiture or not.   There are holdings to the effect that it
could enjoin a threatened breach thereof. *Booth* v. *Gaither,*
58 Ill. App. 263; *Barrington Apartment Ass'n.* v. *Watson,*
38 Hun. (N. Y.), 545; *Sloan* v. *Martin,* 54 N. Y. Super. Ct.
87; 24 Cyc. 972.   If it has right of its own volition, to inter-
pose its veto power upon negotiations for a wrongful assign-
ment, it can intervene in a suit to compel such an assignment,
and resist the effort to obtain it.   In these questions, it has
a litigable interest, a right to be heard on them.

On the decisive question already suggested, the Brush
Creek Coal Company, and the Easley Coal Company, rely
upon the original terms of the restrictive clause, extending
only to the lessees; the terms of the assignment, going beyond
the assignee and including its successors and assigns; and
lack of any terms in the written assent, forbidding subse-
quent assignment without such assent.   The appellee, on the
other hand, emphasizes the express assumption by the as-
signee, of the terms and conditions imposed by the leases upon
the lessees; the terms of the written assent going only to the
Brush Creek Coal Company; the recitals in the deed of as-
signment, above referred to; and negotiations with the les-
sor for its consent to the assignment claimed here, treated as
amounting to a contemporaneous construction of the limita-
tion clause, prior assignment and consent.   The rule known
as that of *Dumpor's Case,* 4 Co. 119 Cro. Eliz. 315, decided
about the year 1603, is invoked by the appellant, on the
ground that it is part of the common law adopted and in
force in this State and remaining unmodified and unrepealed
by any statute.   For the appellee, the soundness of that decis-
ion and the rule it enunciates is challenged; but, if it is to be
recognized as law, it is then urged that the peculiar circum-
stances of this case and the form and substance of the as-
signment and assent thereto preclude application of the
doctrine.

As carefully gathered and stated from the opinion deliver-
ed by the learned Chief Justice McSherry, in *Reid* v. *Wiess-
ner Brewing Co.,* 88 Md. 234, decided as late as 1898, the
rule in Dumpor's Case is this: "When there is a condition in

a lease against the assignment of the term without the consent of the lessor, and such consent is given to one assignment without any restriction as to future assignments, the condition is waived altogether and the assignee may assign the term without the consent of the lessor.'' As so stated, it was applied in that case, and, in the recognition and application thereof, the court was cognizant of the criticisms made upon it, by both ancient and modern jurists.     Notwithstanding the fault found with it, for reasons variously stated, 7 Am. Law Review, 616, it seems to be recognized as unimpeachable common law in all jurisdiction and applied, in the absence of a statutory repeal or modification thereof, when the condition and the terms and provisions of the assignment and consent are such as make it applicable.     *Murray* v. *Harway,* 56 N. Y. 337; *Dakin* v. *Williams,* 17 Wend. (N. Y.) 540; *Wertheimer* v. *Hosmer,* 83 Mich. 56; *German-American Sav. Bank* v. *Gollman,* 155 Cal. 683; *Chipman* v. *Emerick,* 5 Cal. 49; *Randolph* v. *Tatum,* 98 Cal. 390; *Pennock* v. *Lyons,* 118 Mass. 92; Taylor, Land & Ten., sec. 410; McAdam, Land & Ten., sec. 241; 24 Cyc. 963; 16 R. C. L. p. 838; 18 Am. & Eng. Ency. L. 662.     There is an express recognition of it as law, in *McKindoe* v. *Darracott,* 13 Gratt. 278.     However much there might be an inclination to dissent from it, as an original proposition, if any at all, it is so well fortified in precedents and judicial opinion that its genuineness cannot be judicially     denied     nor its consequences avoided.     Being a part of the common law, it is made effective here by the Constitution, and there being no repugnance between it and the constitutional     provision, it must ''Continue the law of the State until altered or repealed by the Legislature.''     Constitution, Art. VIII, sec. 21.

Upon the inquiry as to whether the benefit of the covenant has been lost, by reason of the former assignment, under this rule, its form and terms are important.     A covenant by a lessee for himself and his assigns, not to assign without consent, runs with the land and is binding upon the successive assigns.     Taking the lease, they take upon themselves the covenant, and it seems that, in such case, one assent by

the lessor does not exhaust his right under the covenant or condition; wherefore subsequent assignments are invalid, if not assented to by him.     *Williams* v. *Earle,* L. R. 3 Q. B. 739; *Roe* v. *Harrison,* 2 T. R. 425; *Jackson* v. *Groat,* 7 Cow. (N. Y.) 285; 16 R. C. L. p. 838; 18 Am. & Eng. Ency. L. 662.     The covenant in the lease here under consideration is not so expressed.     The lessees covenanted only on behalf of themselves.     If the covenant does not in terms extend to assigns of the lessee, it does not run with the land, nor bind an assignee, unless, by some form of agreement, he subjects himself to it.     *Lynde* v. *Hough,* 27 Barb. (N. Y.) 415; *Philpot* v. *Hoare,* 2 Atk. 219; *Dougherty* v. *Matthews,* 35 Mo. 520; *Paul* v. *Nurse,* 2 Moody & R. 525.

Whether the assignee, in this instance, has bound itself by some form of agreement, to remain under the condition against assignment, depends upon the interpretation of the deed of assignment, the terms of which have been already disclosed.     The assignment assented to by the lessor was to the assignee, its successors and assigns, unless the assent clause, naming only the assignee, limits the words of assignment so as to eliminate or render ineffective the words, "its successors and assigns."     It contains no negative   words. Successors and assigns are in the deed in .which the lessor joined.     The Brush Creek Coal Company was the only immediate assignee. Its successors and assigns were not formal parties to the deed.     The assignment was to it for itself, its sucessors and assigns.     The words of the assent   clause presumptively refer to the formal and known assignee, to which the title was to pass, not to the legal effect of the deed.     Their purpose was mere description of the paper or document, not declaration of its effect.     Hence, manifestly, they do not restrict, limit or qualify the terms.     But, if they did, it is difficult, if not impossible, to perceive how such elimination or restriction could alter the situation.     Under the rule in Dumpor's Case, an assignment to the Brush Creek Coal Company only, with assent, would terminate or waive the condition forever and as to everybody. Under such an assignment, the lease could be passed on to other persons.

In legal effect, it would be an assignment to the assignee and its assigns. In this connection and upon this inquiry, therefore, the phrase, "its successors and assigns," are of no significance at all.

But the assignee's assumption of "all of the terms and conditions imposed upon" the lessees, "as set forth in the lease agreements," and agreement faithfully to fulfill them, are express covenants, and, if they extend to the condition against assignment, it is impossible to say the assignee does not remain under and subject to that condition. Against this suggestion, the decision in *Reid* v. *Weissner Brewing Co.* 88 Md. 234, is invoked; but, in that case, there was no express covenant on the part of the assignee to perform the covenants and conditions of the lease. In support of it, *Consumers' Ice Co.* v. *Bixler*, 35 Atl. (Md.) 1086, is invoked, but, in that case, the issue was one of liability for rent, to payment of which the assignee had bound itself by express contract. In the effort to escape such liability, it relied upon a subsequent assignment without consent, because, although "bound by all the covenants and agreements contained in the original lease," it has not in terms agreed to pay the rent. The court held, agreeably to uniform authority, that one bound to pay rent for a full term, cannot exonerate himself, by an assignment not assented to, whether there is a stipulation in the lease against assignment without consent or not. Little aid on the question of interpretation is afforded by that case, if any at all. In each of two other cases relied upon by both sides, *Kew* v. *Trainor*, 37 N. E. (Ill.), 223, and *Springer* v. *Chicago Real Estate Loan and Trust Co.*, 66 N. E. (Ill.) 850, there was in the written assent constituting part of the agreement among the parties, an express inhibition of further assignment without the lessor's consent. In each of them, there was also an express assumption by the assignee of all the covenants, conditions and obligations of the lease. The first one of these two cases involved the question of forfeiture of title, by assignment without consent, and there was a recovery by the lessor. The other involved only liability for rent, avoidance of which

was attempted on the ground of a subsequent assignment without assent. It was the same in principle, as *Consumers' Ice Co.* v. *Bixler.* In only one of these three cases did the question here involved arise, namely, *Kew* v. *Trainor.* A lessee bound by agreement to pay rent is not discharged from his obligation to pay it, by an assignment not assented to by the lessor, whether the lease contains a condition against assignment without consent or not. *Kanawha & Gauley Coal Co.* v. *Sharp,* 73 W. Va. 427; 24 Cyc. 1124. A lessee having right to assign may assign and still be liable for rent, either because the lessor refuses to release him, expressly or impliedly, or because he expressly agrees to remain liable therefor. And an assignee may expressly bind himself to pay the rent for the whole term, whether he has right to assign or not, and may also bind himself not to assign without consent of the lessor. The assignee in *Kew* v. *Trainor* and *Springer* v. *Chicago etc. Co.,* did both. In *Consumers' Ice Co.* v. *Bixler,* the assignee seems to have bound itself only to pay the rent for the term, but the omission to bind itself not to assign did not enable it to avoid its obligation to pay the rent, by assigning.

In all three of the cases just analyzed, the court's emphasized the assignee's assumption of the covenants, conditions and obligations of the leases, and also discussed the condition against assignment, which in two of them was not important at all. In the one in which it was vital, the assignee's agreement not to further assign without consent was made conclusive of the question of right involved. What the court's conclusion in that case would have been, if that provision had not been in the agreement, cannot be certainly determined from the opinion. It was distinctly held, however, that the assignee's express assumption of all the terms and conditions of the lease carried and made effective the forfeiture clause which was in the lease and not expressly referred to in the written assent to the assignment.

A condition or covenant against assignment is a restraint upon alienation, wherefore it is not favored in law and does not exist, unless expressly and clearly provided for in the

lease. *Medinah Temple Co.* v. *Currey,* 58 Ill. App. 433; *Livingston* v. *Stickles,* 7 Hill. (N. Y.) 253; *Lynde* v. *Hough,* 27 Barb. (N. Y.) 415; *Munkwitz* v. *Uhlig,* 64 Wis. 380. Under the rule in Dumpor's Case, the assent to the assignment destroyed the condition in the lease, unless it was saved by some provision of the assignment and assent, considered as parts of one composite agreement. · It was not specifically saved, nor was any like condition specifically imposed upon the assignee. The terms of the assumption of the obligations of the lease, by the assignee, are very general. The condition or covenant against assignment is collateral and special in its nature. It does not clearly nor necessarily fall within the assumption of "all the terms and conditions" of the lease and the agreement to fulfill them, which are primary and affirmative in form and substance, while the covenant not to assign was collateral and negative in character. · The terms of the assignments and written assents involved in the Illinois cases above referred to make it manifest that the draftsmen thereof doubted the sufficiency of such assumptions and agreements to continue the condition against assignment in force. To put it beyond question they inserted an express inhibition of further assignment. It is to be remembered in this connection, that the deed of assignment was between Butts and Dalton, on one side, and the Brush Creek Coal Company, on the other. The covenants thereof were between them. The Coal River Mining Company merely assented to the agreement they made. No definite and express covenant in its favor appears in the instrument. Its adoption of the leases, expressly made parts thereof, and the assumption and promise of the assignee, as tested by the terms of the assignment and the relations of the parties, were in favor of the lessees, the assignors. It was to their interest to be relieved of their affirmative covenants to pay royalties, keep and render accounts, properly operate the mines and the like. They had no appreciable interest in the preservation or continuance of the condition against assignment, and it was manifestly to the interest of the assignee, to obtain the leases without re-

striction.    It agreed to pay an additional royalty of three
cents per ton.    It is presumed, like every other trader, to
have intended to get all it could for what it gave and prom-
ised to give.    And it is likely, that the lessees intended to
dispose of all they could pass, in consideration of what they
could get for it, and thus turn it to their advantage. Hence,
it cannot well be assumed that any of them intended to insert
.any provision for the benefit of the lessor. There was no cove-
nant in the lease, directly with it.    One made for its benefit,
if made at all, must arise by implication, and nothing in the
.instrument or the situation of the parties so strongly argues
intent to make provision for it, that the contrary thereof can-
.not reasonably be supposed.    Indeed, the form and terms
of the paper, the relations of the parties to it and their
interests all argue against it.    Under the authorities and
rules of interpretation, we are of the opinion    that,    even
though the assignee expressly assumes, in general words, the
terms and conditions of the lease, in an assignment assented
to by the lessor, there is no restraint upon his right further
to assign, unless it is specifically forbidden or covenanted
against in some way, in the assent or the assignment.

In view of the application of the rule of strict construc-
tion, it is hardly necessary to say the recitals of the assign-
ment have no appreciable bearing upon the question involved.
Only an implication could arise out of them.    Besides, there
is no recital or admission of mere agency in the lease, on the
part of the lessees.

It is not perceived that secs. 21 and 24 of ch. 72 of the
Code, have any bearing upon the question at issue.    One
of them defines a short form of covenant against assignment
and the other a short form of the covenant for right of re-
entry.

. The rule of contemporaneous construction has no applica-
tion.    When assent to the proposed assignment was refused,
the Brush Creek Coal Company    claimed    right to assign
without it.    In this transaction, the question of the exist-
ence of the condition against assignment, came into contro-
versy for the first time, and, when it was asserted in a man-

ner unsatisfactory to the assignee, its existence was denied. At the inception of the transactions with the Easley Coal Company, the assent to the assignment seems to have been regarded as a merely formal matter, and it was assumed that it would be granted practically as a matter of course.     Negotiations for consent and admission of necessity thereof, do not change the contract as written.     They are all subsequent and are not founded upon any new consideration.

Upon these principles and conclusions, the decree will be reversed, the temporary injunction perpetuated, a decree entered, requiring the Brush Creek Coal Company to assign to the plaintiff said lease of the tract of land, designated Lease No. 6, and such portion of the tract designated Lease No. 7, as it agreed to put into the assignment, and the cause remanded.

*Reversed; Injunction perpetuated; Remanded.*