466 S.E.2d 810

Eugene A. **McKENZIE,** Margaret P. **McKenzie,** Thomas J. **McKenzie,** Margaret E. **McKenzie** and Barbara **McKenzie,** Plaintiffs Below, Appellants,

v.

**CHERRY RIVER COAL & COKE COMPANY and Island Creek Coal Company, Defendants Below, Appellees.**

No. 22798.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 19, 1995.

Decided Dec. 13, 1995.

John H. Tinney, Carl L. Fletcher, Spilman, Thomas & Battle, Charleston, for Appellants.

Dan O. Callaghan, Callaghan & Ruckman, Summersville, Jonathan D. Schiller, David O. Bickart, Kaye, Scholer, Fierman, Hays & Handler, for Appellees.

PER CURIAM:

Eugene A. McKenzie, Margaret P. McKenzie, Thomas J. McKenzie, Margaret E. McKenzie and Barbara McKenzie (hereinaf-

ter the McKenzies) appeal a summary judgment order by the Circuit Court of Greenbrier County in favor of Cherry River Coal & Coke Co., and Island Creek Coal Co. (hereinafter the coal companies). On appeal, the McKenzies allege that the circuit court erred in finding that some of their claims were barred by the statute of limitations and in finding that no dispute existed between the parties on their other claims. Based on our *de novo* review, because we find no error in the circuit court's determinations concerning the statute of limitations and the lack of a dispute, we affirm the circuit court's decision.

The case *sub judice* arises from a April 24, 1962 lease wherein the McKenzies leased certain coal lands to Cherry River for twenty years with similar options to renew (hereinafter the lease). Island Creek, by an agreement dated August 8, 1969 with Cherry River, became the mining agent on the leased property. On August 28, 1981, the McKenzies filed a five-count complaint against the coal companies in the circuit court seeking the possession of the leasehold and monetary damages. On April 24, 1985, the McKenzies added another count alleging that the coal companies violated the lease by underpaying the McKenzies. By orders filed on November 22, 1991, September 15, 1993, August 5, 1994 and September 6, 1994, the circuit court granted summary judgment in favor of the coal companies, and the McKenzies appealed to this Court.

## I.

### STANDARD OF REVIEW

This appeal's sole issue is the appropriateness of summary judgment. "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). *In accord Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 58, 459 S.E.2d 329, 335, *rehearing denied* (1995). Our traditional standard for granting summary judgment is stated in Syl. pt. 3, *Aetna Casualty & Surety Co. v. Federal Ins. Co. of N.Y.*, 148 W.Va. 160, 133 S.E.2d 770 (1963):

A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.

*In accord* Syl. pt. 1, *Williams v. Precision Coil, Inc.*, *supra*; Syl. pt. 2, *Painter v. Peavy*, *supra*; Syl. pt. 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).

Rule 56 (1978) of the *W.Va.R.Civ.P.* is " 'designed to effect a prompt disposition of controversies on their merits without resort to a lengthy trial,' if there essentially 'is no real dispute as to salient facts' or if it only involves a question of law." *Williams v. Precision Coil, Inc.*, 194 W.Va. at 58, 459 S.E.2d at 335, *quoting, Painter v. Peavy*, 192 W.Va. at 192 n. 5, 451 S.E.2d at 758 n. 5, *quoting, Oakes v. Monongahela Power Co.*, 158 W.Va. 18, 22, 207 S.E.2d 191, 194 (1974). Subsection c of Rule 56 states, in pertinent part, that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Syl. pt. 2 of *Williams v. Precision Coil, Inc.*, states:

Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

*See also* Syl. pt. 4, *Painter v. Peavy*, *supra*.

Syl. pt. 3, *Williams v. Precision Coil, Inc.*, states:

If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.

According to *Williams v. Precision Coil, Inc.*, the function of the circuit court at the summary judgment stage "is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Williams v. Precision Coil, Inc.*, 194 W.Va. at 59, 459 S.E.2d at 336, *quoting, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986). *See* Syl. pt. 3, *Painter v. Peavy, supra.* In addition to drawing any permissible inference from the underlying facts in the light most favorable to the party opposing summary judgment, *Williams v. Precision Coil, Inc., id.*, also stated:

> In assessing the factual record, we must grant the nonmoving party the benefit of inferences, as "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513, 91 L.Ed.2d at 216. Summary judgment should be denied "even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom." *Pierce v. Ford Motor Co.*, 190 F.2d 910, 915 (4th Cir.), *cert. denied*, 342 U.S. 887, 72 S.Ct. 178, 96 L.Ed. 666 (1951).

With this standard in mind we review the circuit court grant of summary judgment. Although the case *sub judice* is factually complex, the following are the major issues on which summary judgment was granted: first, when did the statute of limitations begin to run on the various claims; second, was the lease forfeited in 1974, and third, did the coal companies deliberately and knowingly underpay the McKenzies for the coal mined, processed and sold from the leasehold.

## II.

### FACTUAL BACKGROUND

Under the lease Cherry River was required to pay the McKenzies a royalty of $0.15 for every long ton of coal mined, with a minimum royalty of $7,200 per year, payable quarterly. The lease allowed a "recapture credit" whereby the lessee was permitted to credit its minimum royalty payments against future payments for coal actually mined and shipped. The parties agree that between 1962 and the end of 1974, the McKenzies received and cashed the minimum royalty payments due. The total amount paid amounting to over $93,000.

On May 6, 1968, a mining accident, commonly referred to as the "Hominy Falls Disaster," occurred on the leased property. After several wrongful death actions were brought against the McKenzies in 1969 and in 1970, the McKenzies brought a third-party action seeking indemnification from Cherry River. Ultimately the wrongful death actions were settled in December 1977 with Island Creek, Cherry River's sublessee, paying the settlement.[1] In 1980, the coal companies, specifically, Island Creek, fully satisfied the McKenzies' indemnity claim.

In January 1971, Island Creek advised the McKenzies that it was suspending deep mining activities of the leased property. However, Island Creek continued to pay the minimum royalty required by the lease. On November 6, 1974, the McKenzies sent Cherry River a "Notice of Default" alleging that Cherry River had breached the lease by (1) failing to employ competent engineers, (2) failing to post accurate maps (both of which were allegations in the Hominy Falls Disaster litigation, *see* note 1), and (3), by refusing to pay the McKenzies' costs of defending the wrongful death litigation. On November 29, 1974, the McKenzies sent Cherry River a "Notice of Termination," which was recorded. On December 10, 1974, Cherry River sent the McKenzies a "Notice of Denial of Cancellation," which was also recorded. The "Notice of Denial of Cancellation" said that the McKenzies

---

1. *See Burdette v. Maust Coal & Coke Corp.*, 159 W.Va. 335, 222 S.E.2d 293 (1976) (*per curiam*) reversing the judgment below and granting the widows of the miners involved in the Hominy Falls Disaster a new trial. Among the issues discussed in *Burdette v. Maust Coal & Coke Corp.* were allegations about the negligence of Maust's engineer and deficiencies on the mining map of the leased property. Maust was a wholly owned subsidiary of Cherry River.

"should do nothing to cast any cloud upon [Cherry River's] title." Nothing else occurred about the "Notice of Termination" until the complaint was filed seven years later.

Although deep mining of the leased property ceased in 1971, between 1974 and 1982, the coal companies reprocessed "middling coal" from coal waste piles and during 1977 and 1978, a contractor for Island Creek surfaced-mined coal.[2] Throughout the period the coal companies continued to tender the quarterly minimum royalty payments required under the lease. After the McKenzies refused to accept the payments in late 1974, the payments were placed into an escrow account and the coal companies continued to make payments during the pendency of this litigation. All such royalty payments have been transferred to the custody of the Clerk of the Circuit Court.

On August 26, 1981, the McKenzies filed a complaint against the coal companies.[3] The complaint, which has been amended, contains six counts. Counts I, II and III allege three separate breaches of the lease, each of which was asserted in the 1974 Notice of Termination: failure to hire a competent mining engineer, failure to post maps, and failure to indemnify the McKenzies against the wrongful death actions. The complaint claims no damages from these alleges breaches, but instead, seeks damages for: (1) "profits plaintiffs lost" beginning in 1974 caused by the coal companies' failure to vacate the leased property; (2) "grief, pain and suffering" resulting from the "refusal to honor" the Notice of Termination; and (3) punitive damages.

Counts IV and VI of the complaint charge that after the 1974 Notice of Termination, the coal companies unlawfully remained on the leased property and with trespass. Counts IV and VI seek the same damages as Counts I, II and III of the complaint. Count V alleges three different breaches of the lease based on a failure to pay in full for coal mined: (1) "short weighing" and therefore, inadequate royalties for coal mined between 1962 and 1971; (2) lack of revenue for the "middling coal;" and (3) failure to pay adequately for the 1977–78 surface mining on the leased property.

The circuit court entered several partial summary judgment orders until finally, the entire case was dismissed. The first partial summary judgment order, filed on November 22, 1991, dismissed Counts I, II and III as time-barred under W.Va.Code 55–2–6 (1981) because each alleged breach occurred before May 6, 1968, the date of the mine accident, and were discovered by the McKenzies, at latest, in April 1971 during the wrongful death trial. This first summary judgment order did not dismiss Counts IV and VI, the trespass and unlawful hold over counts, and deferred ruling on Count V pending further submissions.[4]

The second partial summary judgment order, filed on September 15, 1993 dismissed Counts IV and VI, finding that because the lease's forfeiture clause was invalid, the coal companies were not trespassing and not holding over. The September 9, 1993 order also granted summary judgment of the "short weight" component of Count V based on the statute of limitations. Finally in 1994, based on a determination that the minimum royalty payments exceeded the total value of the "middling coal" (order filed on August 5, 1994) and the 1977–78 surfaced-mined coal (order filed on September 6, 1994), summary

---

**2.** According to the circuit court, "middling coal" is "coal or fuel removed from a refuse pile by recleaning it."

**3.** In its June 28, 1993 opinion that was attached to its summary judgment order filed on September 15, 1994, the circuit court said: "There are indications in the record that at least a part of that delay was a conscious strategy on the part of the lessors whereby they intentionally waited until after the litigation arising out of the 'Hominy Falls Disaster' had been concluded before attempting to pursue other remedies."

**4.** The first summary judgment order, which was filed on November 22, 1991 by Judge Summerfield, was based on remarks made during a hearing on November 13, 1989 by Judge Charles M. Lobban. After Judge Lobban withdrew, the case was assigned to Judge Summerfield, who after reviewing the matter entered summary judgment on Counts I, II and III based on the statute of limitations.

748

judgment was granted to the coal companies of the remaining portions of the complaint.[5]

On appeal, the McKenzies allege the following assignments of error: (1) The circuit court erred in ruling that any of their claims were barred by the statute of limitations. (2) The circuit court erred in failing to find a forfeiture of the lease; and (3) The circuit court erred in ruling that no genuine issue of material fact existed concerning the surfaced-mined and the "middling" coal.

## III.

## DISCUSSION

### A.

### Statute of Limitations

W.Va.Code 55–2–6 (1923) provides a ten-year period in which to bring an action based on a contract. W.Va.Code 55–2–6 (1923) states, pertinent part:

> Every action to recover money, which is founded upon an award, or on any contract other than a judgment or recognizance, shall be brought within the following number of years next after *the right to bring the same shall have accrued,* that is to say: ... if it be upon any other contract in writing under seal, within ten years; if it be upon an award, or upon a contract in writing, signed by the party to be charged thereby, or by his agent, but not under seal, within ten years.... (Emphasis added.)

■ Although the parties agree that the ten-year statute of limitations applies, they dispute when this ten-year period began to

run. The McKenzies maintain that the statute of limitations began to run in December 1974 when the coal companies refused to recognize the lease's termination and vacate the leased property. The coal companies maintain that the statute of limitations began to run when the McKenzies learned of the alleged contract breaches and not at some later artificial date when the McKenzies sought to terminate the lease.

The complaint in Counts I, II and III alleges that the lease was breached by the coal companies' failure, first, "to indemnify" the McKenzies in the wrongful death action, second "to keep employed a competent engineer," and third, "to keep posted correct, accurate and complete maps," respectively. On March 16, 1970, the coal companies refused the McKenzies' demand "to indemnify" them in the wrongful death action. Thomas McKenzie testified that he learned of the coal companies' failure to employ a competent engineer during the April 1971 trial of the wrongful death action. Mr. McKenzie stated that he knew no map was posted on the date of the mining accident, May 6, 1968. Thus the McKenzies knew of the breaches related to mining accident in 1970 (indemnify), April 1971 (engineer), and May 1968 (map).

Count V of the Complaint seeks damages from a short weighing of the coal mined, an alleged 22.5 percent discrepancy, and a resultant reduced royalty payment for coal mined before 1971. In 1967, Thomas McKenzie sent three letters objecting to the tonnage reports filed by Cherry River; his July 26, 1967 letter ended with a request for "prompt payment."[6]

---

5. In the Supplemental Response of Plaintiffs to Defendants' Motion for Summary Judgment, filed in circuit court on July 25, 1994, counsel for the McKenzies reported that because the recaptured credit exceeded the amounts owed for surfaced-mined coal and "middling" coal (two parts of Count V of the Complaint), "the McKenzies cannot now in *bona fides* further oppose defendants' Motion for Summary Judgment" of those two aspects of Count V of the Complaint. Although the McKenzies agreed that the recaptured credit exceeded the value of the surfaced-mined and the "middling" coal, they continued to dispute how much coal was surfaced-mined and how much "middling" coal was reprocessed.

6. On appeal, the McKenzies allege that included in this issue is a question about coal left by the lessors which should have been mined under the lease. However, the question of unmined coal was not presented to the circuit court and we decline to address this issue for the first time on appeal. *See Whitlow v. Bd. of Educ. of Kanawha County,* 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993); *Shrewsbury v. Humphrey,* 183 W.Va. 291, 395 S.E.2d 535 (1990); *Cline v. Roark,* 179 W.Va. 482, 370 S.E.2d 138 (1988). We, also, decline to address the McKenzies' allegation that the coal companies "abandoned" the lease because the abandonment issue was not presented below. *See Berry Energy Consultants and Managers, Inc. v. Bennett,* 175 W.Va. 92, 331 S.E.2d 823 (1985).

The McKenzies allege that these claims only "accrued" when Island Creek began "holding over" on December 12, 1974. Thus the McKenzies argue that their complaint is timely because it was filed within ten years of the date on which they allege the lease terminated. In support of their argument, the only authority they cite is *Winer v. Edison Bros. Stores Pension Plan,* 593 F.2d 307 (8th Cir.1979), an ERISA case in which the Court of Appeals held that forfeiture of pension rights did not occur upon an employee's misconduct or discharge but occurred when a pension committee declared the forfeiture by denying the employee's pension claim. However, the appeals court's decision was based on an interpretation of the vested pension rights under ERISA § 203(a), 29 U.S.C. § 1053(a). Given the specific question of *Winer v. Edison Bros. Stores Pension Plan* concerning the vesting of pension rights, we find that the ERISA case has little persuasive value in determining when a coal lease is forfeitured.

The McKenzies' argue that the statute of limitations for breaches of a lease only begins to run when a forfeiture is "declared." Under this theory, a problem discovered in the first year of a twenty year lease, which is used to declare a forfeiture in the twentieth year of lease, would not have to be litigated for another ten years. This theory, if adopted, would extend the ten-year statute of limitations to the term of the lease (or last day when a forfeiture could be declared) plus ten years.

▮ We have consistently held that the statute of limitations begins to run when the breach of the contract occurs or when the act breaching the contract becomes known. The statute of limitations does not begin to run when a party to the contract declares a forfeiture. Such an expansion of the statute of limitations as urged by the McKenzies is not within the plain language of the statute which allows ten years for an action to be brought "after the right to bring the same shall have accrued." Neither is such expansion consistent with the spirit or the purpose of setting barriers to stale claims that could have been the subject of more timely litigation. *See supra* pp. 816–817 for text of W.Va.Code 55–2–6 (1923), the applicable statute of limitations. In *Donley v. Bracken,* 192 W.Va. 383, 452 S.E.2d 699 (1994), we discussed when the right to suit "accrued" under W.Va.Code 55–2–15 (1923), the statute of limitations for infants and insane persons. In *Donley v. Bracken,* 192 W.Va. at 387, 452 S.E.2d at 703, *quoting U.S. v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 356, 62 L.Ed.2d 259, 266 (1979), we said:

The general purpose of statute of limitations is to encourage presentation of claims within a reasonable time. The United States Supreme Court stated in *United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 356, 62 L.Ed.2d 259, 266 (1979), that such statutes:

"represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that 'the right to be free of stale claims in time comes to prevail over the right to prosecute them.' *Railroad Telegraphers v. Railway Express Agency,* 321 U.S. 342, 349[, 64 S.Ct. 582, 586, 88 L.Ed. 788, 792] (1944).... [A]lthough affording plaintiffs what the legislature deems a reasonable time to present their claims, ... [these statutes] protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise."

In the case *sub judice,* the acts complained of in Counts I, II, III and part of V of the complaint arose and were known to the McKenzies for more than ten years before they filed their complaint. The attempt to disguise these stale matters as arising when a forfeiture is declared was correctly rejected by the circuit court. (*See infra* section III.B. for a discussion of the forfeiture provision.) We note that the damages which the McKenzies claim for these stale acts result from the alleged forfeiture and do not flow from the complained of acts. *See* Syl. pt. 2, *Mullins v. Green,* 145 W.Va. 469, 476–78, 115 S.E.2d 320, 325 (1960); Syl. pt. 2, *State v. Bonham,* 119 W.Va. 280, 193 S.E. 340 (1937). Merely

750

calling these counts of the complaint "hold-over counts" does not change the nature of the alleged acts or suspend the running of the statute of limitations until a separate action, such as the refusal to vacate the leasehold, occurs. Because the McKenzies' "right to bring the" action on Counts I, II, III and V in part, was known to them in April 1971, at the latest, we find this part of the complaint filed on August 28, 1981 is barred by the statute of limitations and therefore, affirm the circuit court.

## B.

### Forfeiture

Counts IV and VI of the complaint are grounded on a forfeiture of the lease, which is based on the November 6, 1974 notice of default and the November 29, 1974 "Notice of Termination" that were sent to the coal companies. The circuit court in its order filed on September 15, 1993 found that no forfeiture occurred and granted summary judgment to the coal companies on Counts IV and VI of the complaint.[7]

It is well recognized in West Virginia jurisprudence that the law does not favor the forfeiture of estates. *Easley Coal Co. v. Brush Creek Coal Co.*, 91 W.Va. 291, 296, 112 S.E. 512, 514 (1922) stated:

Forfeitures of estates are not favored in law. The right to forfeit must be clearly stipulated for in terms, else it does not exist. Every breach of a covenant or condition does not confer it upon the injured party.

The forfeiture provision of the lease in this case is general and does not "give the right of forfeiture in terms so clear and explicit as to leave no room for any other construction," a requirement for forfeiture under *Bethlehem Steel Corp. v. Shonk Land Co.*, 169 W.Va. 310, 315, 288 S.E.2d 139, 142 (1982), *quoting, Easley Coal Co. v. Brush*

*Creek Coal Co.*, 91 W.Va. at 297, 112 S.E. at 512. In *Bethlehem Steel Corp. v. Shonk Land Co.*, 169 W.Va. at 314–315, 288 S.E.2d at 142, we found the legal principles about forfeiture clear in both federal and West Virginia law and quoted the following from *Easley Coal Co. v. Brush Creek Coal Co.*, 91 W.Va. at 296–97, 112 S.E. at 514–15:

Every breach of a covenant or condition does not confer it [the right to forfeit] upon the injured party. It never does, unless it is so provided in the instrument. Such breaches are usually compensable in damages, and, if a forfeiture has not been stipulated for, it is presumed the injured party intended to be content with such right as is conferred by ordinary remedies. *The broken covenant or condition relied upon for forfeiture must be found not only in the instrument, by clear and definite expression, but also within the forfeiture clause, by such expression.* A covenant or condition merely implied, or an express one not clearly within the forfeiture clause, will not sustain a claim of forfeiture by reason of its breach. *Peerless Carbon Black Co. v. Gillespie*, 87 W.Va. 441, 105 S.E. 517.... (Emphasis in *Bethlehem Steel Corp. v. Shonk Land Co.*) Syl. pt. 3 of *Bethlehem Steel Corp. v. Shonk Land Co.*, *supra* states:

A broken covenant or condition relied upon for forfeiture must be found not only in the instrument, by clear and definite expression, but also within the forfeiture clause by such expression.

*See Easley Coal Co. v. Brush Creek Coal Co.*, *supra.*

In the case *sub judice*, the termination clause of the lease was similar to the forfeiture provision quoted in *Bethlehem Steel Corp. v. Shonk Land Co.*, 169 W.Va. at 316, 288 S.E.2d at 143, which we found to be "[a] catchall, dragnet forfeiture clause for breach of any contractual covenant [that] is inadequate."[8] Because the lease's forfei-

7. We note that the alleged forfeiture in late 1974 was claimed to be the trigger event for the running of the statute of limitations for Counts I, II, III and V (the short weigh claim) of the complaint. If no forfeiture occurred, then the damages alleged for these claims, did not occur. *See*

section III.A. discussing these counts of the complaint.

8. The forfeiture clause of the lease states, in pertinent part:
... [I]f the Lessee shall fail to keep, observe or perform any of the covenants, agreement or

ture provision does not give "clear and definite expression" to which broken covenant or condition may be used to declare a forfeiture, we find the lease's forfeiture clause inadequate to declare a forfeiture.[9] *See Christian Land Corp. v. C. & C. Co.*, 188 W.Va. 26, 29, 422 S.E.2d 503, 507 (1992) (*per curiam*) (holding that a "catchall, dragnet forfeiture clause for breach of any contractual covenant is inadequate" and will not terminate a lease).[10]

■ Finally, we recognize that a forfeiture is not available when monetary damages can make whole the party to be benefited by the forfeiture. Syl. pt. 2 of *Bethlehem Steel Co. v. Shonk Land Co.*, *supra*, states:

Equity will relieve from a forfeiture when a party benefited by the forfeiture can be made whole by monetary damages.

We need not address the availability of monetary damages in the case *sub judice* because those claims are barred by the statute of limitations.

Because principles of equity, fairness and conscionability prevent the alleged forfeiture, we find that the circuit court correctly granted summary judgment on Counts IV and VI of the complaint.

## C.

### Coal Mined in the 1970's

Finally, the McKenzies allege that summary judgment should not have been granted on their allegations concerning the middling coal and the surface-mined coal. The McKenzies argue that the circuit court's judgment of these issues is based on the incorrect assumption that the lease remained in effect and that the royalty payments were owed and paid. Given our determination that the lease was not forfeited but remained in effect, the circuit court's assumptions concerning the royalty payments are correct.

■ The McKenzies also argue that these royalty payments do not cover the coal left "unmined" on the leased property. This argument is raised for the first time on appeal and we decline to address this new argument. *See* note 4 discussing new arguments on appeal.

■ Finally the McKenzies allege that material issues remain concerning the amount of the middling and surface-mined coal. However, the exact amount of the middling and surface-mined coal is not material because the McKenzies stated that "it cannot be said that the amount [owed for the middling and surface-mined coal] exceeds the amount of 'recapture credit' to which the defendants are apparently entitled under the terms of the lease...." Based on this calculation, the McKenzies did not oppose the coal companies' motion for summary judgment and are bound by their admission. Syl. pt. 4

conditions ... then and in any such case Lessors may, at their option, forthwith declare ... this Agreement and Lease forfeited....

The lease further provides:

... [T]hat in the event of a forfeiture ..., then all machinery, rails, ties and other property attached in any way to the land shall immediately become the absolute property of the Lessors and the same shall be credited on any claim or claims of the Lessors against Lessee ...

9. The McKenzies also failed to comply with the lease's notice requirement for declaring a forfeiture. The lease provides for either a 30–day notice or a 60–day notice with the right by Cherry River to cure the alleged defect within those time periods before the right of cancellation could exist. The Notice of Default given on November 6, 1974, followed by a Notice of Termination on November 29, 1974, did not comply with either time requirement of the lease.

The breaches that the McKenzies maintain underlie the forfeiture (*see* section III.A for Counts I, II and III of the complaint) accrued more that ten years before the McKenzies sought judicial intervention on the issue of forfeiture. These stale claims are barred under the statute of limitations (*see* section III.A) and the doctrine of laches. *See Laurie v. Thomas*, 170 W.Va. 276, 294 S.E.2d 78 (1982) discussing the application of the doctrine of laches in an equity case.

10. The McKenzies did not reject Cherry River's 1982 renewal notice declaring that they had exercised their renewal option. In *Bethlehem Steel Corp. v. Shonk Land Co.*, 169 W.Va. at 318–19, 288 S.E.2d at 144, this Court found that the conduct, which did not justify a forfeiture, did justify the lessors' refusal to permit renewal of the lease. The circuit court found in the case *sub judice* that Cherry River's renewal notice was "ample and adequate" and the lease was validly renewed and in effect.

of *State v. McWilliams*, 177 W.Va. 369, 352 S.E.2d 120 (1986) states:

A judicial admission is a statement of fact made by a party in the course of the litigation for the purpose of withdrawing the fact from the realm of dispute.

Given the McKenzies' admission, we find their final assignment of error to be without merit.

For the above stated reasons, the decision of the Circuit Court of Greenbrier County is affirmed.

Affirmed.

MILLER, Retired Justice, sitting by temporary assignment.

ALBRIGHT, J., did not participate.